Edward Kinsey et al., complainants and respondents,

*v.*

: George Feller et ux., defendants and appellants.

[Filed March 3d, 1902.]

1. Subsequent creditors can attack or impeach a voluntary deed made by one free from debt only by proving actual fraud, and the burden is upon them to show an actual intent in the minds of the parties at the time of the making of the conveyance to hinder, delay of defraud creditors.

2. A wife's separate estate will not be charged with the debt of her husband merely because she stood by in silence while he represented the property as his, and permitted the creditors to act in the belief that this representation was true. *Carpenter* v. *Carpenter's Executors, 12 C. E. Gr. 502,* followed.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *51 Atl. Rep. 485.*

*Messrs. Coddington & Swackhamer,* for the appellants.

*Mr. Alvah A. Clark,* for the respondents.

The opinion of the court was delivered by

Vroom, J.

The bill was a creditors' bill, and prayed that the real estate therein mentioned might be decreed to be answerable for the payment of the judgments of the complainants and that it might be sold under execution as the property of the defendant George Feller or that the described properties might be subjected to the lien of the said judgments.

There were two judgments, one obtained by the complainant Edward Kinsey on the 17th day of May, 1900, for the sum of $207.20, debt and costs, and the other obtained by the complainant the Plainfield Ice and Cold Storage Company on the 28th of June, 1896, for the sum of $264.54, damages and costs.

The aggregate amount of these judgments was by the decree declared and decreed a lien upon the properties, and the defendants were ordered to pay the complainants the amounts of their several judgments, and interest, together with the costs of suit, within thirty days after service of a copy of said decree, and it was ordered that in default of such payment so much of said lands and premises as would be sufficient to raise and pay said judgments should be sold.

The real estate in question consisted of three tracts of land in North Plainfield, Somerset county. It is undisputed in the case that the first two tracts were originally conveyed to the defendant George Feller in the years 1879 and 1880, and in 1881 conveyed to Mrs. Feller, through an intermediate person, and that the conveyance for the third tract was made directly to Mrs. Feller in 1885. The defendant George Feller, at the time these conveyances were made, was solvent and free from debt.

The attack upon these conveyances is made by these complainants who both are subsequent creditors, and the burden then is upon them to show that at the time they were made there was an actual intent to hinder and defraud creditors. The law upon this subject may be said to be authoritatively settled in this state. It was held by this court in the case of *Carpenter* v. *Carpenter's Executors, 12 C. E. Gr. 502,* that "to enable a subsequent creditor to impeach a conveyance made under these circumstances, it must be shown to have been made *mala fide;* its fraudulent character must be proved as a fact. And if the evidence does not lead to the conviction that there was a present purpose to contract future indebtedness, the payment of which was to be evaded or hindered, or some other fraudulent design to the injury of creditors or purchasers, then the conveyance will stand."

And again in the later case of *Hagerman* v. *Buchanan, 18 Stew. Eq. 292, 296,* the doctrine is stated with equal force. "The rule that has been recognized is that a voluntary settlement can be attacked by a subsequent creditor only upon the ground of the existence of an actual intent in the minds of the parties at the time of the execution of the conveyance to hinder, delay or defraud creditors by means of the deed." See, also, *Bouquet* v. *Heyman, 5 Dick. Ch. Rep. 114.*

The theory of the learned vice-chancellor in establishing what he considered to be fraud in this case was that the husband was putting into property money that belonged to his creditors, and he was getting credit on the strength of being the owner, and that he was taking money out of his business instead of paying his debts. It appears that Feller was in business and had carried it on from about the time of the first conveyance to Mrs. Feller until the year 1896, when he failed, and that his inability to meet his debts during the last three or four years of his business was due to his having lost upwards of $3,500 by bad debts. He had dealt with the complainant Kinsey upwards of eighteen years and had bought from him upwards of $1,000 worth a year. The indebtedness for which Kinsey had obtained the judgment was incurred after 1894, more than twelve years after the conveyances to the wife. From the evidence in the case no doubt can be raised as to his solvency both in 1881 and 1885, when the deeds in question were made. I am unable, after a careful examination of all the evidence, to see that it bears out the theory of the vice-chancellor or that the testimony presents any evidence of a purpose on the part of Feller to commit a fraud.

As was said by Mr. Justice Dixon in *Carpenter* v. *Carpenter's Executors, supra:* "While the law requires that one should be astute in ferreting out the evidences of fraud, yet the law will not presume actual fraud. The evidences, when produced, must satisfy the judgment that it exists." Now, the facts relating to the conveyance of the first two tracts to Mrs. Feller show that this conveyance was voluntary only so far as a part of the property was concerned. In fact, Feller himself, in referring to the transfer of the two tracts to his wife, said that it was made because she had paid for the property, and her testimony satisfies me that the payments for the same were made out of her own funds, and that the mortgages given thereon were paid off by her and that she still owes, in part, for the moneys borrowed to make such payments.

That Feller made certain weekly payments to his wife, part of which her thrift enabled her to save, and that in addition to this she added to her fund for improvements the receipts from keeping boarders, taking in washing and the sale of milk and

chickens, does not alter the posture of affairs.    That the husband could permit her to thus appropriate the proceeds of her labor seems to me clear, and is supported by a like position taken in *Hagerman* v. *Buchanan, supra; Peterson* v. *Mulford, 7 Vr. 481; Luse* v. *Jones, 10 Vr. 707.*

As to the property purchased in 1885, Mrs. Feller's testimony that she herself paid the consideration therefor; that subsequently she built upon it and mortgaged it for $2,500, this encumbrance being still upon it, stands in the case without contradiction.

The difficulty with the calculations made by the court below as to the amount of money put into these properties by Mrs. Feller is that allowance was made only for the amounts estimated as having been contributed by her in cash and accounted for by her; all contributions, the result of her savings, rents and the receipts from her labor in keeping boarders, taking in washing and sales of milk, &c., were ignored.    These must have amounted to a considerable sum and she expressly says all were applied by her to the payment for the lots and improvements. I do not deem it material to the disposition of this case to examine in detail the several payments made by Mrs. Feller, nor can I concur in the estimate made by the vice-chancellor.   It is sufficient, however, to say that from the facts proven and all the circumstances surrounding the transactions, no fraud is shown, or can be inferred, which will affect the title to these properties.

Another feature of the case, however, calls for consideration. It was alleged by the complainant Kinsey that on one occasion he went to the Feller house and asked for payment of the moneys due to him, and that Feller then, in the presence of his wife, said: "You needn't be afraid of me, I have got this property." Kinsey at first, in reply to the question as to whether Feller's wife heard him say that, replied: "Yes, sir; she didn't say nothing," and subsequently he said: "I think she was kind of listening to what we were talking about."    Both Feller and his wife deny that such a conversation occurred, Mrs. Feller stating that she never heard her husband speak of the properties to Mr. Kinsey or anyone else.    Giving to the testimony of Mr. Kinsey its greatest force, independent of any denials, it leaves it a mat-

ter of very great doubt whether Mrs. Feller heard the remark. But as was said in the case of *Carpenter* v. *Carpenter's Executors, supra:* "Even if the strongest inferences of fact against her be drawn, they would not accomplish the end which the complainant seeks. Here was no actual pledge of the property to the payment of the debt to be contracted; no benefit accrued to the wife's estate from the credit given; nothing that she did, or omitted to do, added credibility to her husband's statement," this court then holding that "a wife's separate estate will not be charged with her husband's debt merely because she stood by in silence while her husband represented himself to be the owner of such estate as an inducement to the creditor to give the credit, and by such representation deceived the creditor."

I·do not think the conveyances to Mrs. Feller were induced by any fraudulent intent to hinder and delay creditors.

The decree below should be reversed.

*For reversal*—The Chief-Justice, Van Syckel, Dixon, Collins, Fort, Garretson, Hendrickson, Krueger, Adams, Vredenburgh, Voorhees, Vroom—12.

*For affirmance*—None.