WASHINGTON NATIONAL BANK

*v.*

DAVID C. BEATTY et al.

[Submitted February 23d, 1909.   Decided March 11th, 1909.

1. Where a father, in expectation of being sued for libel, transferred all his property to his son for an expressed consideration of $16,500, only $5,000 of which the son claimed to have paid, and there was grave doubt as to whether he ever paid anything, there being neither change of possession of the property nor of the instruments evidencing the transfer, the son was chargeable with knowledge of the facts and as a knowing participator in the transaction.

2. Where a father, in contemplation of being sued for libel, conveyed all his property to his son to prevent its seizure under any judgment recovered against him, such conveyance was subject to attack by existing creditors, including the persons whose threat to sue induced the transaction, and by subsequent creditors able to prove actual fraud.

3. Where a father conveyed all his property to his son to prevent threatened litigation, a bank, which did not come into existence until nearly five years after the conveyance, could not sue to set the same aside and subject the property to a judgment on a debt contracted over ten years after the conveyance; it being impossible to say under such circumstances that there was intent on the father's part to defraud the bank.

4. Where, in a suit by a bank to set aside an alleged fraudulent conveyance, complainant did not claim that it permitted the debtor to incur the obligation on the faith of his reputed ownership of the property, it would be presumed that complainant had knowledge of the conveyance at the time the debt was incurred.

On bill, answer, replication and proofs.

*Mr. Oscar Jeffery,* for the complainant.

*Mr. Elmer King,* for the defendants.

HOWELL, V. C.

David C. Beatty became obligated to the complainant about February 1st, 1905, in the sum of upwards of $300.   The obliga-

28

tion was originally that of accommodation endorser on the commercial paper of a stranger to this suit. The obligation was renewed from time to time, until early in 1906, when the promissory note which represented it was protested for non-payment and the contingent liability which Mr. Beatty had theretofore been under became fixed. Suit was brought on this promissory note and a judgment recovered against Mr. Beatty in the supreme court on January 15th, 1907, on which a *fi. fa.* was issued on the following day. This writ was returned unsatisfied by the sheriff of Morris county.

On September 21st, 1894, upwards of twelve years before the incurring of the obligation and the recovery of the judgment, Mr. Beatty owned a farm in Morris county containing about one hundred and eighty-nine acres. On that day he conveyed the same to his son, George M. Beatty, and at the same time transferred to him three mortgages, two of which were liens upon another farm. The deed and the assignments of mortgages were acknowledged on September 22d, and recorded on September 24th, 1894. In 1897, the defendant George M. Beatty foreclosed the two mortgages which were liens upon the other farm and bought in the property at the sheriff's sale and took a sheriff's deed therefor. He now holds title to both farms.

At the time of the above mentioned conveyance and transfer Mr. Beatty also transferred to his son all his personal property.

Up to this time Mr. Beatty appears to have been very prosperous; he owned the one farm free and clear of encumbrances, and had money out at interest; he owed no debts. By the transaction above stated he transferred to his son all his property, real and personal, and so stripped himself of the title to everything that he owned. The bill in this case is a creditors' bill, and is filed to reach the two farms above mentioned upon the ground that in 1894 they were conveyed away by the judgment debtor for the purpose of defrauding creditors.

The facts which are relied upon are these: Mr. Beatty had libeled a firm of commission merchants in New York who had threatened him with a suit for $100,000 for damages thereby caused by him to them in their business. Although no such suit was ever brought the threat alarmed Mr. Beatty, and concerning

it, he frankly says that he transferred his property for the purpose of preventing the commission merchants from taking it in satisfaction of any judgment which they might recover against him. The grantor has always remained in possession of the farm and has always taken all the proceeds of it to his own use and has never accounted to his son, the grantee, for any portion of them. To all outward appearances there was never any change of possession. The grantor and his wife have always, since the conveyance, continued to reside upon the farm. Neither did the grantee ever go through the formality of making a lease to the grantor for the premises. The grantee at that time 'was just entering upon the profession of civil engineer, and it was impossible for him to take and retain actual possession of the farm and at the same time practice his profession. The consideration stated in the deed for the conveyance of the real and personal property is $16,500. The utmost that the grantee claims to have paid is $5,000, and there is grave doubt as to whether he ever paid anything. In fact it is probably true that the grantee at that time was without means of his own with which to make so large and important a purchase. Again, the grantee was not present at the time the deed and assignments were made and executed. This part of the transaction, as well as the lodging of them for record in the office of the county clerk, was performed by the grantor, and not only not in the presence of the grantee, but I think without his knowledge at the time. The title deeds have never been in the possession of the grantee, but always in that of the grantor or his wife. When the grantor produced them in court he stated that he had got them that morning from his wife, who had kept them in a bureau drawer in the house on the premises where they had always lived. I think that the circumstances make the grantee chargeable with knowledge of all the facts, and that therefore he was a knowing participator in all that was done. *Atwood* v. *Impson,* 20 *N. J. Eq.* (*5 C. E. Gr.*) *150; Merchants Bank* v. *Northrup,* 22 *N. J. Eq.* (*7 C. E. Gr.*) *58; Tantum* v. *Green,* 21 *N. J. Eq.* (*6 C. E. Gr.*) *364.*

The foregoing state of facts leads me to conclude that this conveyance was made in such a manner and under such circumstances as would have entitled a creditor of David C. Beatty, who

was a creditor at the time of the conveyance, to have successfully attacked it upon the ground that it was made for the purpose of hindering and defrauding creditors. It likewise would have been vulnerable to the attack of the commission merchants whose threat to bring suit induced the transaction, because they were creditors within the meaning of the statute of frauds. *Scott* v. *Hartman, 26 N. J. Eq. (11 C. E. Gr.) 89; Boid* v. *Dean, 48 N. J. Eq. (3 Dick.) 193;* and because it was their claim especially that the parties to this transaction intended to hinder and delay. The real question is whether the transfer being fraudulent as to existing creditors and as to subsequent creditors as to whom there was a positive intent to defraud, it is also void as to creditors who were not and could not have been in contemplation at the time of the conveyance.

The complainant in this suit is a national banking association; it was not organized until about ten years ago, several years after the fraudulent conveyance was made. The debt which it is now seeking to charge on the lands in question was not contracted until 1905, over ten years after the making of the conveyance which is now claimed to be fraudulent, and it is in favor of a corporation creditor, which did not come into existence until nearly five years after the conveyance. The parties to the conveyance and transfer cannot therefore be said to have had the complainant or the complainant's claim in mind at the time they were made. Creditors who became such subsequently to the execution and delivery of a voluntary conveyance, have the right under the statute of frauds to call upon the court to set aside a voluntary conveyance as well as creditors whose claims are in existence at the time, but such subsequent creditors must prove actual fraud. *Carpenter* v. *Carpenter, 27 N. J. Eq. (12 C. E. Gr.) 502; Kinsey* v. *Feller, 64 N. J. Eq. (19 Dick.) 367,* two cases which contain the expression of a large number of authorities in our own state. But it seems to me now, as I expressed myself at the hearing, that in this case there ought to be some evidence going to show that there was a fraudulent design which would include the particular creditor who complains. It can hardly be said that a man intends to defraud another of whom he has never heard and with whom he has no

acquaintance, or that he intended to defeat a debt which might subsequently arise in favor of a person yet unborn. Such an insistment strikes me as being too nebulous and theoretical for practical use in the daily affairs of the world.

"A voluntary conveyance may have been made so long prior to the contracting of the debt that it is impossible to conceive that the conveyance could have been made with a view of contracting that particular debt, and where this is the case it is difficult to understand how it can be properly regarded as fraudulent as against this subsequent creditor, nor upon what principle he may be permitted to disaffirm it if either he had notice of it or did not permit the obligation to be contracted in the reasonable belief that his debtor was still the owner of the property; in other words, that a voluntary transfer, although made for the purpose of defrauding creditors, is not forever thereafter void as against subsequent creditors however remote the creation of their debts may have been from the execution of the conveyance." *14 Am. St. Rep. 750*, in notes.

The point was discussed by Vice-Chancellor Pitney, in the case of *Gray* v. *Folwell, 57 N. J. Eq. (12 Dick.) 446*. The bill in that case was a creditor's bill; among other things, it attacked a conveyance of lands made by Folwell to his wife upwards of ten years before the recovery of the complainant's judgment on the ground that it was without consideration and was made for the purpose of defrauding a certain particular creditor, who was then suing Folwell and who subsequently obtained a decree against him for some $5,000. This decree was satisfied before the creditor's bill was filed. The vice-chancellor upheld the conveyance, and concerning the point now under consideration says: "I can find no authority for the position that where a conveyance is made for the purpose of hindering a single creditor, who is afterwards paid in full, and there were no other concurrent creditors who might have been hindered or delayed, and there was no immediate intention of engaging in hazardous business and becoming indebted, a creditor who becomes so years afterwards can set up the old fraud in avoidance of the conveyance."

I think there is no such case in this state, and it is my opinion that the suggestion of such a doctrine is contrary to the trend of professional opinion. A creditor ought not to be permitted

to take advantage of the statute to disaffirm a fraudulent transaction, which was not in some, at least, remote degree aimed at him. In the case of one who makes a voluntary settlement, with the intent of embarking in business the case is clear. There he is held to have had in mind all the indebtedness which he might have anticipated could arise out of the conduct of the business, and this remark applies to every case in which a man places his property beyond the risks of . new ventures and speculations. The difficulty which the complainant encounters is the difficulty of assigning to the defendants an intention to defraud the particular complainant out of the particular debt and of showing that the particular complainant and the particular debt come within the intent to defraud which it states was put into operation so many years before.

The statute lays stress on the fraudulent intent; it declares that every conveyance which "shall be contrived in fraud, covin or collusion *with intent* to hinder, delay or defraud creditors," shall be void as to such persons as are thereby defrauded. The cases are uniform that the intent of the parties is a necessary element in a suit to set aside the transaction. This intent may be expressed or it may be implied, but it must appear as one of the features of the litigation. *Demarest* v. *Terhune,* 18 *N. J. Eq.* (3 *C. E. Gr.*) 540; *Tantum* v. *Green,* 21 *N. J. Eq.* (6 *C. E. Gr.*) 364; *Kalmus* v. *Ballin,* 52 *N. J. Eq.* (7 *Dick.*) 293; *Wait Fraud. Conv.* § 196; *May Fraud. Conv.* (3d ed.) 62. I am not able to find in this case any evidence of what I consider to be the necessary intent to defraud the complainant.

I therefore am of the opinion that the complainant must fail in his suit, and I will advise a decree dismissing the bill.

It should be stated that the bill is wholly based upon the operation of the statute of frauds on the transaction and not to any degree upon any phase of the law touching misrepresentation. In other words, the complainant does not claim that it permitted Beatty to incur the obligation to it which is now in suit on the faith of his reputed ownership of the property in question. The distinction is pointed out in *Todd* v. *Nelson,* 109 *N. Y.* 327. The omission to charge the defendants on this ground leads to the conclusion that the ground did not exist

in fact, or, in other words, that the complainant had knowledge of the acts now alleged to be fraudulent, at the time the obligation was incurred.