## RIDGEWAY v. KENDRICK et al.

### (Circuit Court of Appeals, Third Circuit. November 3, 1913.)

#### No. 1,747.

BANKRUPTCY (§ 303*) — ACTION BY TRUSTEE — FRAUDULENT CONVEYANCE OF PROPERTY.

The claim of a trustee that a mortgage given by a bankrupt was fraudulent or voidable as a preference *held* not sustained by evidence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

Appeal from the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Suit in equity by Warren L. Ridgeway, trustee in bankruptcy of Ida G. Kendrick, against Ida G. Kendrick and others. From the decree, complainant appeals. Reversed in part.

The following is the opinion of the District Court, by Cross, District Judge:

The bill of complaint in this cause is filed by Warren L. Ridgeway, as trustee in bankruptcy of the estate of Ida G. Kendrick, against Ida G. Kendrick, Ellen Gladys Kendrick, Harry M. Geary, Samuel H. Headley, and also against Ida G. Kendrick and Harry M. Geary, as trustees for Ellen G. Kendrick, to set aside certain conveyances and mortgages, to which more particular reference will later be made. The defendant Ida G. Kendrick was duly adjudicated a bankrupt on April 10, 1911, pursuant to the prayer of an involuntary petition therefor, filed in this court March 27, 1911. The complainant was elected trustee in bankruptcy of the estate of said bankrupt, at a meeting of the creditors held May 19, 1911. Since the bill of complaint was filed, certain property, which it was therein alleged had been transferred by the bankrupt in fraud of her creditors, and which was thereby sought to have restored to her estate, have been foreclosed and sold, or otherwise conveyed to independent parties, and have thereby admittedly been eliminated from these proceedings. The matters remaining for consideration are a transaction set up in the seventh and eighth paragraph of the bill of complaint, being a transfer of a hotel known as "Halcyon Hall" made by the bankrupt on the 15th day of August, 1908, to her and her father, Harry M. Geary, as trustee for her daughter, Ellen Gladys Kendrick, upon certain trusts in the said deed and bill of complaint particularly set forth; also, two other alleged fraudulent transactions: One, a mortgage dated November 25, 1910, made by the bankrupt to her father, Harry M. Geary, to secure the payment of $15,000 one year from date, with interest, upon a property known and designated as the Hotel Imperial; the other, a mortgage also upon the Hotel Imperial, dated November 30, 1910, made by the bankrupt to one Samuel H. Headley, to secure the payment of $20,000 with interest at any time within two years from the date thereof.

Another mortgage to one Joseph Salus, upon the Hotel Imperial for $15,-000 is stipulated, in behalf of all of the parties to this suit, to be invalid; hence it will require no further consideration.

The above conveyance from the bankrupt to herself and father, as trustees for her daughter, was made in August, 1908, at which time the bill alleges the bankrupt was insolvent, being largely indebted to divers persons, and that said conveyance was made to hinder, defraud, and delay, not only those creditors, but such other persons as might subsequently become her creditors. Indeed, the bill alleges, not only that that conveyance, but the mortgages above mentioned, and others which need not, for the reason above given, be considered, were all part of a plan, conceived at the time last men-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

208 F.—54

tioned, to defraud her present and future creditors, and that she was then insolvent; but the evidence, largely given by the bankrupt, does not support either of these allegations. It does, however, show that she owed at that time unsecured debts to the amount of from $15,000 to $16,000, that is according to her own testimony; but, on the other hand, she swears that at that time her assets were largely in excess 'of her liabilities, and shows that she was worth over and above her indebtedness, secured and unsecured, upwards of $80,000. It also appears that her then existing unsecured indebtedness, consisting largely of running accounts, was with one possible exception, entirely paid off before the bankruptcy proceedings against her were instituted, and in the excepted case it was reduced to a comparatively insignificant amount, so that it could hardly be claimed to afford a sufficient, or indeed, any foundation for setting aside as fraudulent a conveyance made nearly three years before. In this connection it should also be noted that there is no evidence that her unsecured creditors had sued or threatened to sue, or had in any way disturbed or harassed her. The bill further alleges, however, and argument is made in behalf of the complainant in support of it, that, at the time the above conveyance was made, the bankrupt had just been compelled to take back the Hotel Imperial from an unsuccessful tenant; that she herself was about to run it; and that it was because of her intended entrance upon this alleged hazardous business that she evolved the fraudulent scheme, above referred to, of making over some of her property to her daughter, and incumbering the balance with intent thereby to defraud her present and future creditors. Mrs. Kendrick, however, was not a novice at the hotel business; she had previously been engaged in it for a long period, perhaps 20 years, and apparently had acquired a considerable estate thereby. At all events, I do not consider that an experienced person, who is about to engage in the hotel business in a thriving place like Atlantic City, is necessarily to be considered as entering upon a hazardous business. 'There is no evidence that such is the case, and the court will not, in the absence of evidence, assume it to be a fact. For this reason, this conveyance ought not to be held fraudulent and void, as against subsequent creditors. The rule that a voluntary conveyance will be set aside, even at the instance of subsequent creditors, where the transfer was made with a view of entering upon a hazardous business, the risks of which the grantor intended to guard himself against at the expense of his creditors, is salutary and wholesome, but under the evidence has no applicability to the case in hand; consequently the prayer of the bill that the conveyance under consideration be set aside as fraudulent will be denied.

The mortgage made by the bankrupt to her father, Harry M. Geary, was without consideration, and is clearly void. It is a circumstance worthy of mention that, since the beginning of this suit, the mortgage was sold under execution for $5; furthermore, the defendant Geary did not appear in this suit and testify in support of his mortgage. The only testimony pertaining to it, of importance, is that of the bankrupt herself, which clearly shows that it was without consideration and intended to protect her property from her creditors. The substance of her testimony in this connection is that she purchased the property which the mortgage covers, being that known as the Hotel Imperial, from her father, the defendant Geary, about 23 years before, for $18,000. The consideration for the purchase, according to her testimony, was to be paid as follows: "I bought it of him under an agreement that I was to give him a thousand dollars a year in cash, and board for him and mama and my grandmother, as long as they lived." She further testified that she supported her mother and grandmother until they died, and her father until she was forced into bankruptcy, and that when she made the mortgage in question she had fully complied with the agreement with reference to the payment to him annually of the sum of $1,000. Subsequently she made an attempt to modify her testimony, and, under the guidance and suggestion of her attorney, swore that she actually owed her father $15,000 at the time the mortgage was made. But the circumstances are such as to make her testimony in this respect unreliable. She seemingly told the truth in the first instance, and then by the aid of leading questions finally succeeded in flatly contradicting herself. She admits that the mortgage was given to

protect her property from a deficiency which had arisen upon the sale of another property under foreclosure of a mortgage. This will appear from the following question and answer:

"Q. By whose advice, if any one's, did you make this mortgage to Mr. Geary?

"A. When Strawbridge foreclosed that mortgage on 142 (South Maryland avenue), I didn't know they could sue on the mortgage afterwards, and then I went to Judge Endicott about papa's mortgage on the Imperial, and that is how I got the mortgage on the Imperial."

She also said that no conversation took place between her father and herself, at the time the mortgage was given. She then immediately added, "I never gave it to him," but later added, "Yes, he saw it, he had it," and then added that she got it back afterwards. She said that she got it away from him and kept it, because, "you see, I have got a sister, and I wasn't having him (father) give that mortgage to her; it is a fine family—I had worked and earned this money, don't you know?" She later said, speaking of the mortgage in question, "that mortgage would have been canceled if the creditors would have settled and let me have the Imperial back and run it." But if the mortgage was supported by a consideration, still it was a past consideration, and the mortgage having been given within four months of bankruptcy, clearly as a preference, should be set aside, since the father undoubtedly had knowledge of her financial condition at the time, and reasonable cause to believe that in accepting it he was accepting a preference. Of the agreement under and pursuant to which it is claimed the mortgage was given, little can be said, for little has been shown. No oral attempt was made to prove its contents.

There remains for consideration the Headley mortgage for $20,000, which the bill of complaint alleges was executed in pursuance of the fraudulent scheme, conceived by the bankrupt in 1908, to hinder, defraud, and delay her creditors. The mortgage is dated November 30, 1910, and covers the Hotel Imperial, together with other property known as 101 States avenue, Atlantic City (since foreclosed and sold under a prior mortgage), and was made to secure the sum of $20,000 with interest at any time within two years. The circumstances under which the said mortgage was given, as shown by the proofs, are as follows: The States avenue property was formerly owned by one Townsend, who, in the fall of 1908, made an exchange of property with Mrs. Kendrick, the bankrupt, by which she conveyed a property known as the Hotel Lawrence, to an appointee of his, and he, by way of exchange therefor, conveyed the States avenue property to Ellen Gladys Kendrick, her daughter. Shortly thereafter Mr. Headley was approached by Mrs. Kendrick, and an attempt made to secure his services in making certain material improvements to the States avenue property. An examination of the title, which he thereupon caused to be made, showed that the title thereto was not in the bankrupt, but in her daughter, whereupon negotiations were entered into between Mr. Headley and the daughter, which ultimately resulted in a contract between them under which Mr. Headley was to furnish the plans, perform the work and labor, and furnish the materials necessary to complete the improvements agreed upon, and was to receive therefor as his compensation 10 per cent. of their cost. Although this contract was made with the daughter, Mrs. Kendrick herself was present, not only when it was made, but subsequently at many of the interviews held between Mr. Headley and her daughter, concerning the making of said improvements. Upon the completion of the contract, Mr. Headley, being unable to get his money, threatened to file mechanics' liens against the property for the sum of $35,593 due him under his contract for the cost of said improvements with 10 per cent. added.

There were prior liens upon the property at this time, aggregating $16,015. Negotiations subsequently entered into between the parties resulted in the procurement of a loan upon the States avenue property from a building association of $30,000, which was to be applied, in the first instance, to the extinguishment of the existing incumbrances thereon, and in the second place towards the payment of Mr. Headley's claim, while so much of his claim as was not thus paid was to be secured by a second mortgage of $20,000 upon the property, provided other satisfactory security in addition to such prop-

erty could be obtained. The reason for this proviso was that Headley did not deem the equity therein over the building association's mortgage sufficient security for the payment of the balance which would remain due him. Mrs. Kendrick and her daughter accordingly endeavored to have Mr. Geary individually and also as trustee, with her for her daughter in the deed above mentioned, become such additional security. This Geary declined to do. Mrs. Kendrick then offered to include in the mortgage the Hotel Imperial, which offer was accepted, and the mortgage in question was executed; whereupon Mr. Headley released to the daughter his right of lien against the States avenue property, and also surrendered certain promissory notes of the daughter, indorsed by Mrs. Kendrick, which had been given him on account of his contract with the daughter while the same was in process of execution. The bankruptcy proceedings against Mrs. Kendrick followed almost immediately thereafter. Since then, the States avenue property has been sold under a proceeding instituted for the foreclosure of the Building Association mortgage, and at such sale realized only sufficient to pay that mortgage with interest and costs. The prayer in the bill of complaint, in respect of this mortgage to Headley, is that it may be set aside and declared null and void as in fraud of the trustee in bankruptcy and the creditors of the bankrupt, and also because it was given as a pre-existing debt under the bankruptcy act. There is one answer, and that a short one, to both of the prayers, and it is this: That Mr. Headley, in so far as the case shows, was entirely innocent in the premises, and there is nothing whatever to show that he had any reason to suppose that the daughter, Ellen Gladys Kendrick, was not beyond question the absolute owner of the States avenue property which she agreed with him to have improved upon the terms mentioned. Apparently the contract for the improvement was made and executed in good faith on his part, and it would be impossible, under the evidence, to find that what he did by way of improvement to the States avenue property was part of a scheme devised two years or more before by him, Mrs. Kendrick, and others, with intent to defraud creditors of Mrs. Kendrick, not then in existence. Nor is there anything to show, or any facts from which an inference could reasonably be drawn, that when Headley released his lien claim, surrendered the notes above referred to, and accepted the bond of Mrs. Kendrick, secured by a mortgage upon the Hotel Imperial as additional security for his claim, he knew anything in particular about her financial affairs. That is to say, there is nothing to show that he knew she was insolvent, or that he believed, or had reasonable cause to believe, that he thereby effected a preference over other creditors of the bankrupt. The natural inference to be drawn from his conduct is quite to the contrary.

My conclusion upon the whole case is that the plaintiff is entitled to have the Geary and Salus mortgages upon the Hotel Imperial set aside, and that the other relief sought by the bill of complaint should be denied. Counsel, unless they can agree upon the form of decree, will be heard thereon upon notice.

Theo. W. Schimpf and Jas. M. Sheen, both of Atlantic City, N. J., for appellant.

Chandler & Robertson and Emerson L. Richards, all of Atlantic City, N. J., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. A creditors' petition was filed against Ida G. Kendrick on March 27, 1911, and she was adjudged bankrupt on April 10. The trustee afterwards chosen brought this suit in equity on August 23 to set aside a trust deed and three mortgages, asserting them to be either fraudulent or preferential. Two of the mortgages were set aside—that part of the decree has been ac-

quiesced in—but the deed and the other mortgage were sustained, and this action of the court is complained of in the present appeal. We refer to the foregoing opinion of the district judge for a statement of the facts and of the reasons for his action.

We agree that no ground exists for setting aside the mortgage to Headley. It cannot be avoided as a preference, because the evidence shows clearly that Headley did not have reasonable cause to believe that a preference was intended. And it cannot be avoided as a fraudulent lien, because the evidence shows that it was recorded according to law, and was both given and accepted "in good faith and not in contemplation of or in fraud upon this act, and for a present consideration." It is therefore protected by Act July 1, 1898, c. 541, § 67d, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), as amended by Act Feb. 5, 1910, c. 487, § 16, 32 Stat. 800 (U. S. Comp. St. Supp. 1911, p. 1509). The consideration was twofold: (1) The surrender by Headley of his right to file a mechanic's lien against the house on States avenue; and (2) the benefit given to Mrs. Kendrick by relieving her of liability as indorser on notes aggregating $6,000. The trustee does not contend that the consideration for the mortgage was less than the face of that instrument; his position is that the transaction was fraudulent throughout and is therefore wholly void. Indeed, the bill goes so far as to charge (but without support in the evidence) that the mortgage was part of a fraudulent scheme devised more than two years before.

But at present we are not prepared to decide that the trust deed conveying the Halcyon Hall property should be adjudged either valid or void. Upon this subject the findings are not satisfactory, and we feel obliged to return the case for further proceedings. Our reasons are as follows: When the deed was made in August, 1908, Mrs. Kendrick owed certain debts, and since that date she has become indebted to other persons. In brief (so far as this deed is concerned) her creditors fall into two classes, existing and subsequent. Section 70e of the Bankruptcy Act clothes the trustee with power to enforce the rights that either class may possess:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it except a bona fide holder for value."

See, also, Crane v. Brewer, 73 N. J. Eq. 558, 68 Atl. 78. But the record shows clearly enough that against subsequent creditors the deed is good. The law of New Jersey allows such creditors to attack a voluntary conveyance, but requires them to prove fraud in fact, and imposes the burden of proof upon them. Mellon v. Mulvey, 23 N. J. Eq. 198; Kinsey v. Feller, 64 N. J. Eq. 367, 51 Atl. 485; Bank v. Beatty, 75 N. J. Eq. 436, 72 Atl. 428. We agree with the District Court that this burden has not been sustained. The transaction was in good faith, and Mrs. Kendrick was solvent at the time. Moreover, we also agree that she did not convey the property in order to remove it from the risks of a hazardous business upon which she was about to

enter. In a word, fraud in fact was not proved, but was negatived; and therefore the attack on behalf of subsequent creditors was not successful.

But the rights of creditors to whom Mrs. Kendrick owed money in August, 1908, remain to be considered, and it is upon this point that we are not satisfied with the findings of the District Court. The law of New Jersey puts this class of creditors on a different footing from subsequent creditors. As we understand the decisions of that state, a person in debt, even if he be solvent, cannot by a voluntary conveyance put his property out of the reach of creditors then existing; and the presumption of fraud against him in favor of such creditors is conclusive. Haston v. Castner, 31 N. J. Eq. 697; Campbell v. Tompkins, 32 N. J. Eq. 173; Severs v. Dodson, 53 N. J. Eq. 634, 635, 34 Atl. 7, 51 Am. St. Rep. 641; Banking Co. v. Dennis, 56 N. J. Eq. 550, 39 Atl. 689.

This being the rule in New Jersey, it is of great importance to know precisely and specifically what debts Mrs. Kendrick owed in August, 1908, and what has become of them since that date. In this respect the findings seem to us inadequate, and perhaps we may fairly speak of them as vague. We think we are entitled to definiteness on this subject in order that we may run no risk of mistake, and we must therefore return this part of the case for further proceedings.

We therefore affirm so much of the decree appealed from as refers to the mortgage to Samuel H. Headley; but we reverse so much of the decree as refers to the trust deed of the Halcyon Hall property, and remand that subject for further proceedings.

Three-fourths of the costs on this appeal to be paid by the trustee in bankruptcy, but to be a charge against the bankrupt estate, and one-fourth to be paid by Ida G. Kendrick and Harry M. Geary, trustees for Ellen G. Kendrick.