## BELDING SAVINGS BANK *v.* MOORE.

1. TRUSTS AND TRUSTEES—EQUITY—PARTIES.

    A bill to declare a mortgage placed in escrow a prior lien over a deed to a trustee for the benefit of an insolvent bank will not be dismissed for failure to make the bank and its receiver parties, where the trustee is made a party, and enters fully upon the defense claimed by the *cestui que trust.*

2. DEBTOR AND CREDITOR—SECURITY—PREFERENCES.

    A debtor may prefer one creditor to another, and may use any of his property for the purpose of paying or securing his debts, in such order as he may select; and nothing but a distinct lien upon property can prevail against such disposition.

3. SAME—PRIORITY OF LIENS.

    The lien of a prior unrecorded mortgage given to secure a creditor, to be delivered upon a contingency which may never happen, is inferior to that of a deed of trust given to secure another creditor, without notice of the existence of the prior mortgage.

4. MORTGAGES—ESCROW—DELIVERY.

    Where a mortgage is placed in escrow upon the mutual understanding of the parties that it shall be delivered upon the joint request of two persons, one of whom is the mortgagor, the instrument can only be rendered effective by the mortgagor's assenting to its delivery.

Appeal from Kent; Grove, J. Submitted June 10, 1898. Decided September 20, 1898.

Bill by the Belding Savings Bank against Le Roy Moore, Charles F. Morgan, and Thomas J. Potter, to compel the delivery of a mortgage held in trust by defendant Morgan, and to declare said mortgage a prior lien over a deed of the same premises to defendant Potter. From a decree dismissing the bill, complainant appeals. Affirmed.

*McGarry & Nichols*, for complainant.

*Francis A. Stace*, for defendant Morgan.

*Fitz Gerald & Barry*, for defendant Potter.

MOORE, J.   The following statement of facts, taken
from the brief of counsel, is justified by the record:

"In June, 1893, the City National Bank of Greenville,
of which Moore was president and actual manager, ceased
to do business, and was put into the hands of a receiver
(Robert T. Gibbons), Moore being then indebted thereto
to the amount of $98,000 and upwards.   Moore was also
then indebted to the complainant bank in the sum of
$4,500 on five several notes, none of which, however, were
then due, the earliest one to fall due maturing July 16th,
and the latest October 15th.   Moore, at the request of the
receiver, immediately after the bank failed, promised to
turn all his property over for the benefit of the bank;
and, relying on that promise, the receiver refrained from
taking any steps by process of law to enforce the collec-
tion of this indebtedness.   After all their notes against
Moore had matured, and about October 21, 1893, com-
plainant commenced a suit at law in the Montcalm circuit
court against Moore, by declaration, to recover the amount
due on the notes.   To this declaration the general issue
was pleaded.   Two months afterwards, on January 2,
1894, the complainant procured an attachment to be issued
in the same suit; and on the same day lands belonging to
Moore in Montcalm county, valued at $15,000, were at-
tached, and on the next following day the lands in question
in this suit were also attached in Mecosta county.

"On January 20th, Moore made his application to the
circuit judge of Montcalm county to dissolve the attach-
ment; and an order that complainant show cause why it
should not be dissolved was made on that application,
and Moore also threatened to prosecute the complainant
for damages for groundlessly suing out the writ of attach-
ment.   The hearing of the application to dissolve the
attachment was adjourned on motion of complainant;
and pending the adjournment, and about February 5,
1894, an agreement was made between the complainant
and Moore that the suit should be discontinued and the
attachment released; that Moore should sign and ac-
knowledge a mortgage on the Mecosta county lands in
question, and should place the same in the hands of de-
fendant Morgan, to be delivered to Leonard, the president
of the complainant bank, when Moore and J. Milton
Earle, one of the directors of complainant, should jointly
direct Morgan so to deliver it.   J. Milton Earle, com-
plainant's witness, states the agreement as follows: 'Mr.

Moore agreed with us that in case of his being obliged to give any security to any one, or in case of any financial difficulty whereby he would be obliged to secure any one, or in case of any attachment proceedings, or of any danger, as he expressed it, he would deliver the mortgage to Mr. Leonard, or cause Mr. Morgan to deliver it. The agreement was that the mortgage should be delivered to Mr. Leonard, the president of our bank, by the direction of Mr. Moore and myself jointly. That is what I mean when I say that Mr. Moore agreed to cause it to be delivered in that way.' Earle, who represented the complainant at that time, was then advised by Mr. McGarry, the bank's counsel, in whose office and in whose presence this agreement was made, that the complainant bank would have to trust Moore in the matter. Whereupon a mortgage of the lands in question was prepared, and signed and acknowledged by Moore, and was put in an envelope, sealed up, and on the envelope was written:

"'Doctor C. F. Morgan; to be delivered to H. J. Leonard when so directed by Le Roy Moore and J. M. Earle.

[Signed]     "'LE ROY MOORE.

"'J. M. EARLE.'

"This envelope was then carried by Moore, accompanied by Earle, to defendant Morgan, to whom it was handed by Moore in Earle's presence, with verbal instruction to hold it until he should be instructed by both Moore and Earle together to deliver it to Mr. Leonard, or give it up to them when they both came after it together, but not to deliver it upon request of either one individually; and Morgan was not informed of the contents of the envelope. Moore retained the possession of the mortgage from the time it was signed and acknowledged until it was by himself placed in Morgan's hands; and it has never been in the hands or under the control of the complainant, nor of any of its officers. The suit at law then pending in the Montcalm circuit court was also discontinued, and the attachment released.

"After this, and about March 29, 1894, Moore, with his wife, executed and delivered to the defendant Potter a deed of conveyance of his property, real and personal, in trust to convert the same into money, and, after payment of expenses, to pay the same to the receiver of the City National Bank of Greenville on the indebtedness and liability of Moore thereto; the balance, if any remained after

paying such liability, to be returned to Moore. This deed was duly recorded in the office of the register of deeds of Mecosta county on the 2d day of April, 1894, and defendant Potter immediately took possession of the lands, and continued to hold and manage the same. Neither Gibbons, the receiver of the bank, nor the defendant Potter, had any knowledge, information, or notice of the agreement between Moore and the complainant, or of the existence of the mortgage, or of its deposit with Morgan. They knew the attachment had been released. Moore refused to join with Earle in directing Morgan to deliver the mortgage to Leonard, and refused to direct such delivery in any manner. Both Leonard and Earle have demanded it of Morgan, who has declined to deliver it because Moore has not joined in directing him to do so; and Morgan retained the envelope containing the mortgage, with the seal unbroken, until directed to open it while giving his testimony in this case."

It is claimed Mr. Moore, at the time the arrangement was made, represented he was solvent. The president and Mr. Earle, a director, say they believed the statement. The cashier says he doubted very much his statement that he was solvent. Subsequent events showed his liabilities were largely in excess of his assets. The only defendant in interest is the City National Bank of Greenville, then in the hands of Mr. Gibbons, a receiver. The bank and its receiver are not made parties to the proceeding. The bill is filed for the purpose (1) of compelling the defendant Morgan to deliver the mortgage to the complainant; (2) to declare such mortgage prior in point of right and time to the deed to the defendant Potter; (3) for general relief. The circuit judge dismissed the bill.

It is claimed the City National Bank and its receiver should have been made parties, and, as they were not, the bill should be dismissed. The deed to Mr. Potter was made for the benefit of the bank. He was made a party, and the defense claimed by the bank is entered upon fully by Mr. Potter. We think there is no difficulty in taking care in this proceeding of the rights of all the parties in interest, and the bill will not be dismissed for that reason.

The contest is one between two banks, both of whom are creditors of Mr. Moore, both of whom were promised security by him.  One of these creditors has obtained, through the deed to Mr. Potter, some of the promised security.  The other creditor claims the transaction between it and Mr. Moore, in relation to the mortgage, resulted in giving it security, which should be treated as prior in time and right to the deed.  The law is well settled in this State that a debtor may prefer one creditor to another, and may use any of his property for the purpose of paying or securing his debts, in such order as he may select, and nothing but a distinct lien upon property can prevail against such disposition.  *People* v. *Bristol*, 35 Mich. 28; *Hill* v. *Bowman*, Id. 191; *Jordan* v. *White*, 38 Mich. 253; *Brigham* v. *Fawcett*, 42 Mich. 542; *State Bank of Fenton* v. *Whittle*, 48 Mich. 1; *Howard* v. *Rynearson*, 50 Mich. 307; *Sheldon* v. *Mann*, 85 Mich. 265; *Strauss* v. *Parshall*, 91 Mich. 475; *Ball* v. *Phenicie*, 94 Mich. 355.

Even if the mortgage which was left with Mr. Morgan was a present security, as contended by complainant, it was not put upon record so that other creditors had constructive notice of it.  All the witnesses sworn who had any knowledge upon the subject testify that Mr. Potter, the trustee, and Mr. Gibbons, the receiver, had no notice of the giving of the mortgage when the deed to Mr. Potter was made and he entered into possession of the property.  The mortgage was never delivered to the Belding Savings Bank, or to any one for it.  Giving the most favorable construction possible to the language used by the parties, the mortgage was to be delivered when a contingency, which might or might not occur, had occurred.  Whether the event had happened or not was left for Mr. Earle and Mr. Moore jointly to decide.  It was agreed by both parties that their joint assent was essential before the mortgage should be delivered to the bank, and a like assent was required before it could be returned to Mr. Moore.  This joint action was never had.  One of the necessary essentials to the validity of a deed so as to pass

title is delivery; not necessarily to the grantee, but it must be surrendered to the grantee or to some third person for the grantee.   If the delivery to the third person is unconditional, it would be a good delivery when accepted by the grantee.   The grantor must intend there should be a delivery of the deed, to make it effective.   *Thatcher* v. *St. Andrew's Church*, 37 Mich. 264; *Stevens* v. *Castel*, 63 Mich. 111; *Schuffert* v. *Grote*, 88 Mich. 650 (26 Am. St. Rep. 316); *Chick* v. *Sisson*, 95 Mich. 412; *Burk* v. *Sproat*, 96 Mich. 404.   The parties mutually agreed the assent of Mr. Moore should be obtained before the mortgage should be delivered.

The decree is affirmed, with costs.

The other Justices concurred.