Long Branch Banking Co. v. Dennis.

## THE LONG BRANCH BANKING COMPANY

### v.

### SARAH E. DENNIS et al.

[Filed October 17th, 1898.]

1. Though a voluntary conveyance by one of all his property to the wife of his son, when contingently liable as endorser of the notes of his son, was not conclusive proof that such conveyance was made to defraud the holder of such notes, as such holder was not an existing creditor of such grantor, the fact of such contingent liability should be considered, with other facts, as tending to show actual fraud.

2. The endorser of certain notes of his son, after their renewal and after the son had become financially embarrassed, conveyed all of his property to the wife of such son in consideration of "one dollar and other good and valuable considerations." In an action to subject such property to a judgment on such notes, the son's wife claimed that she had rendered services for, and loaned money and furnished clothing and food to, her father-in-law in consideration of such conveyance. It was admitted that the son's wife had agreed, as a part of such transaction, to support her father-in-law for life, and it appeared that his alleged debt to her was inflated and that the immediate occasion of the conveyance was the financial embarrassment of the son.—*Held*, that, though the deed in question could not stand against such judgment creditor as an absolute conveyance, it should have effect as a mortgage to the extent of the reasonable value of the grantee's services.

Heard on bill, answer and proofs.

*Messrs. Parker & Van Gelder*, for the complainant.

*Messrs. Fay & Van Note*, for the defendants.

PITNEY, V. C.

The object of the bill is to subject certain lands, the title whereof is vested in the defendant Sarah E. Dennis, to the lien of a judgment which the complainant holds against Edwin Dennis, who was previously the admitted owner and conveyed them to Sarah E. Dennis by deed dated January 18th, 1896.

On the 29th of January, 1897, the complainant obtained judgment in the Monmouth county circuit court against Edwin Dennis and Charles E. Dennis for the sum of $872.34 and $38.90 costs, in all $911.24. The judgment was based upon four promissory notes made by Charles E. Dennis, the husband of Sarah and son of Edwin Dennis, to the order of and endorsed by the latter, which matured on the 8th, 13th, 14th and 16th of October, 1896, respectively. Those notes were given in renewal of other like notes which were discounted by the complainant bank for Charles E. Dennis, and which renewals ran back to a period prior to the date of the conveyance in question.

The consideration mentioned in the deed from Edwin Dennis to Sarah is $1 and other good and valuable considerations, and the premises included the whole of the grantor's property.

Thus, briefly presented, and in the absence of any other facts, the case would be this: That on the 18th of January, 1896, Edwin Dennis, being contingently liable as endorser for his son, Charles, to the amount of between $800 and $900, to the complainant bank, made a gift of the land in question to his daughter-in-law, Sarah E. Dennis, the wife of his son, Charles. Thus stated, the case would be within the doctrine of *Severs* v. *Dodson, 8 Dick. Ch. Rep. 633,* reversing *Dodson* v. *Severs, 9 Dick. Ch. Rep. 305.*

The gist of the decision in that case, as I read the opinion, is that a contingent liability as an accommodation endorser of a promissory note, on the part of a person making a gift of land, is not of itself conclusive proof that the gift was made for the purpose of defrauding the holder of the note. The settled rule in this state is that, as to all existing creditors, voluntary conveyances are conclusively fraudulent without regard to the existence of an actual intent to defraud. *Severs* v. *Dodson* held that the

holder of such accommodation endorsement is not such a creditor, and the endorser is not a debtor. It, however, recognized the right of the holder of endorsed mercantile paper to show actual fraud in a conveyance by the endorsee. At *p. 635* the court says: "At the time in question they were not creditors of the donor. It is readily admitted that they were such in a sense that entitled them to the remedies provided in the act for the prevention of frauds and perjuries. They can undoubtedly set aside conveyances and transfers of property made to defeat their just claims. But at present we are not called upon to construe the statute itself, our present function being to construe the rule of evidence that this court has superinduced upon the statute. This discrimination has not always been made, and the omission has confused the subject. The act invalidates certain transfers of property infected with fraud. The rule now being considered relates to the proof of such fraud, declaring that the contemporaneousness of the gift and the debt establishes it for certain purposes and to a definite extent. * * * When a man is in debt, especially if such debts be due, it is certainly not irrational to infer, if he give away his property, that the intention was to defeat such claims, but such deduction would seem to be most extravagant if, instead of a present indebtedness, he has incurred a mere liability as a warrantor of title, as a tort-feasor, or as surety on an administrator's bond. If such responsibilities as these latter, which may, in the long run, be transformed into debts, should have the effect of invalidating voluntary settlements of property, then such settlements would be the most uncertain of legal transactions." And at *p. 639:* "But the present case demands the application of a rule the most opposite of this. We are not now called upon to ascertain the meaning of statutory language in legislative policy, our entire province being to demarcate the rule of evidence promulgated by ourselves that makes the existence of fraud in voluntary conveyances, under a certain condition, a mere inference of law, irrespective of the truth. The rule is one of the most rigorous character, having the operation of an estoppel, and is to be kept within the narrowest limits. It is, therefore, enough for this

court to say that the contingent liability of an accommodation endorser, before dishonor, does not make him a debtor so that the holder of the paper can invalidate a voluntary conveyance made by him when there was no actual fraud in the transaction."

This view does not deprive the fact of the existence of a contingent liability on the part of the grantor of its ordinary and natural probative force, in connection with other facts and circumstances to show actual fraud, but simply of any conclusive effect in that respect. Hence, I conclude that the decision leaves the parties in the present case at liberty to allege and prove fraud on the one side and to repel it on the other, and leaves the contingent liability of the grantor to be considered as a fact in the case.

Neither party was content at the hearing to rest the case upon the bare facts as above stated, but went into proof on the issue of fraud or no fraud.

The defendant Mrs. Dennis sets up a consideration for the conveyance in the shape (1) of services rendered by her to her father-in-law, who is quite aged, and has been somewhat helpless for many years, and (2) moneys loaned and advanced and clothing and food furnished by her to him.

[Discussion of facts omitted.]

My conclusion upon the whole case is that this deed cannot stand against this judgment creditor as an absolute conveyance. At the same time, however, I think there is sufficient merit in the wife's claim, particularly with regard to her services in taking care of the old gentleman, to warrant the court in allowing it to stand as a mortgage for a reasonable sum. The difficulty in the case is to arrive at a just amount. We have seen that no account whatever was kept of moneys advanced and substantially no vouchers are produced. The whole transaction is a family affair, and this increases the difficulty.

Taking the case altogether, the best estimate I can make is the sum of $800, and I will advise a decree that the conveyance in question shall be deemed and held to be a mortgage for $800, as against the complainant, without interest up to the date of the decree.

Two modes of enforcing this decree suggest themselves; one is that the premises be sold by a master to pay the complainant's claim, with interest and costs, subject to a mortgage in favor of Sarah E. Dennis for $800; or second, that the premises be sold free of the mortgage, and the defendant Sarah E. Dennis be first paid out of the proceeds $800, with interest from the date of the decree. In either case the balance, if any, to go to Mrs. Dennis.