MICHIGAN TRUST CO. v. COMSTOCK.

1. FRAUDULENT CONVEYANCES—HOMESTEAD.
A creditor cannot attack the conveyance of a homestead for fraud.

2. SAME—AGREEMENT TO SUPPORT—CONSIDERATION.
An agreement for the future support of the grantor is not a sufficient consideration for a conveyance as against creditors.

3. SAME—SUPPORT FURNISHED PRIOR TO DEED.
Expenses incurred or services performed for and in behalf of a grantor prior to the execution of the deed constitute a valid consideration, entitling the grantee to compensation therefor on the deed's being set aside by creditors.

4. INSOLVENT DEBTORS—PREFERENCES.
An insolvent debtor has a right to prefer one creditor to another.

Appeal from Mecosta; Russell, J., presiding. Submitted April 10, 1902. (Docket No. 49.) Decided May 19, 1902.

Bill by the Michigan Trust Company, receiver of the Mecosta County Savings Bank, against Dolly Ann Comstock, George W. Millner, and Jennie M. Millner, in aid of execution. From a decree for complainant, defendants Millner appeal. Modified and affirmed.

*M. Brown*, for complainant.

*Smedley & Corwin*, for appellants.

MOORE, J.   This is a bill filed for the benefit of a creditor of Mrs. Comstock, in which it is sought to set aside a deed made by her to her daughter and her daughter's husband.   This deed was made the 22d day of July, 1899. The receiver obtained a judgment against Mrs. Comstock July 12, 1899, and made a levy upon the land in question August 14, 1899.   The circuit judge made a decree, in which he found the land conveyed was worth $4,000, and that it embraced a homestead.   He also found Mr. Millner had paid taxes upon the property conveyed, amounting to $722.   The decree provides there shall be paid to Mr. and Mrs. Millner the sum of $1,500, the value of the homestead interest, and to Mr. Millner, for taxes and interest, $451.25.   It provides for a sale of the land subject to the payment of these sums.   The defendants have brought the case here by appeal.   The complainant, after showing its judgment, execution, levy, and the conveyance by Mrs. Comstock to the other two defendants, rested.   On the part of the defendants, Mr. and Mrs. Millner, Dr. Griswold, Mr. Tucker, and Mr. Nucomb were sworn.   No rebutting proof was put in by complainant.   The witnesses for defendants testified the property was worth from $3,000 to $3,500, and was assessed at $4,000.

The testimony discloses that in the fall of 1898 Mrs. Comstock became ill with dropsy.   She was living in her own house with her husband.   Her daughter and son-in-law, Mr. and Mrs. Henderson, were living with her, and taking care of her.   The Hendersons decided to go away. Mr. Millner was a druggist at Big Rapids, and prior to the 22d of July he furnished Mrs. Comstock with drugs and medicines to the amount of $74.   He also bought wood for her prior to April, amounting to $82.50.   April 1st the Millners moved into the house.   Mrs. Millner's version of the agreement is:

" I remember when I came to my mother's home to take care of her.   It was the 1st of April, 1899.   My mother

was sick, and needed care, and my sister was going away, and there was no one to care for her, and we had to go and care for her. My sister's name was Eva Z. Henderson. Before me and my husband went there my sister took care of my mother. She had not been ill so long; she had been ill only about six months when we went up there. At the time we went there she was not any better. There was no prospect of her getting any better soon. At that time they called it asthma. Later on they called it dropsy. She required the attendance of a nurse constantly. We never left her alone a moment from the time we went there. She had sinking spells part of the time. When we went there in April, 1899, the talk we had with mother—my husband and I—was that, if we would come there, and take care of her, and provide her a home there in that house where she was living, that when she was gone we was to have the home. The home was to be deeded to us at that time, to take effect right along. My husband and I agreed to that. We agreed that when we went down there that we were to provide all the care she needed, and that she was to turn the home over to us in payment for the care we were to give her. She was owing my husband at that time a small amount. It was to wipe that debt out, all back indebtedness, and for all future care. We didn't know how many years she would be sick, nor she didn't know. I talked it over with my husband before we agreed. We talked it over a number of times before we went. Our duties commenced the 1st of April, 1899."

The testimony discloses that, as a result of the dropsy, Mrs. Comstock was helpless; she became very heavy, weighing 250 or 300 pounds; that her illness made it necessary for the Millners to keep a hired girl, and to keep the house unusually warm all the time; that her meals were served in her room. Mrs. Comstock died in May, 1901, and the Millners paid the doctor's bills and funeral expenses. The doctor testified, as to Mrs. Comstock's condition, that she required constant care; that her limbs enlarged so the skin opened, and discharges were made, which were offensive; and that it would have been difficult to get a nurse who would remain any length

of time, and, if one could have been obtained, it would have cost $15 to $25 a week; and that a charge of $10 a week for what Mrs. Millner did would be very reasonable. Mr. Millner paid Mrs. Comstock's taxes for 1896, $251.53; also the taxes for 1897, $257.19; also the taxes for 1898, $181.69.

For the purpose of carrying out the agreement made in April, Mrs. Comstock, on the 22d of July, 1899, made a quitclaim deed of her homestead. At the same time the Millners gave back to her an agreement containing, among others, the following provisions:

"Now, therefore, in consideration of the said conveyance of said lands and tenements to them as aforesaid, the said parties of the first part hereto agree to support, maintain, and clothe her, the said Dolly Ann Comstock, for and during the remainder of her natural life, in as comfortable a manner as she has been accustomed to during the past two years, and furnish her with all necessary medical attendance, medicines, and nurses so long as she shall live, and finally to pay all expenses of her last illness as well as burial and funeral expenses. It is further agreed by said first parties hereto that the conveyance of the property aforesaid shall be and is received by them in full payment and satisfaction of and for all expenses and care heretofore incurred and exercised by them in behalf of her, the said party of the second part hereto."

There is nothing to impugn the good faith of the parties in entering into this transaction. Mrs. Comstock had the right to do what she would with her homestead. *Rhead* v. *Hounson*, 46 Mich. 243 (9 N. W. 267); *Cole* v. *Cole*, 126 Mich. 569 (85 N. W. 1098); *Eagle* v. *Smylie*, 126 Mich. 612 (85 N. W. 1111). She had a right to prefer one creditor to another. *Shay* v. *Wheeler*, 69 Mich. 257 (37 N. W. 210); *Belding Sav. Bank* v. *Moore*, 118 Mich. 154 (76 N. W. 368). It is also true that an agreement for future support would not be a sufficient consideration for a conveyance as against creditors, for that would be a provision for the direct benefit of the grantor. *Rynearson* v. *Turner*, 52 Mich. 7 (17 N. W.

219). So far, however, as expenses had been incurred or services had been rendered up to the time when this deed was made, we can see no reason why defendants should not receive compensation therefor. *Howard* v. *Rynearson*, 50 Mich. 307 (15 N. W. 486); *Rynearson* v. *Turner*, *supra*. There was no dispute but that, prior to the making of the deed, the following items for expenses and services had been incurred by the Millners, made necessary for the proper care of Mrs. Comstock: Drugs and medicines, $74; wood, $82.50; hired help, $80; doctor's bill, $23; extra work, $48; nursing by Mrs. Millner, $160. There had also been paid by Mr. Millner, on the property, taxes amounting to $239.16 more than was allowed by the circuit judge. The decree should be modified by adding these items to the decree made by the circuit judge, and it is so ordered. Defendants will recover costs of this court.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.