FARMERS & MERCHANTS BANK, Appellee, v. F. W. DAIKER, THERESA DAIKER, JOHN DAIKER and PETER DAIKER, Appellants.

Fraudulent conveyances: WHO MAY ATTACK SAME. As a general rule
1 it is only existing creditors who can attack a conveyance of all of one's property which is liable to execution, even though made upon a promise of future support.

Same: EXISTING CREDITORS. Where parents contracted to convey their
2 real property to a son in consideration of their support for the remainder of their lives, and the son entered into the possession and thereafter held the exclusive control of the same, a creditor whose claim against one of the parents originated thereafter, though prior to the conveyance, was not an existing creditor who was entitled to subject the property to the satisfaction of his claim.

Same:  INTENT:  CONSIDERATION.  The consideration for property con-
veyed by parents to a son for their future support is to be deter-
mined from the value of the property at the time of the contract
and change of possession, and not from its value at a much later
date when the formal conveyance was actually made.  In the instant
case the consideration was not so grossly inadequate as to indicate
a fraudulent intent.

Same:  CHANGE OF POSSESSION:  EVIDENCE.  Where parents contracted
with a son to convey their farm to him in consideration for their care
and support, and he thereafter assumed full management and con-
trol and did all those things which characterize ownership, became
the business head and was so recognized in the community and among
those with whom they had business transactions, the parents exer-
cising no act of dominion over the property except to make a new
mortgage in settlement of a prior one, there was such a change of
possession as to constitute notice of his ownership to creditors of the
parents whose claims arose after the contract, although all of the
parties continued to occupy the premises as one family; no matters
appearing which would estop the son from asserting his ownership.

Same:  ESTOPPEL.  The fact that the son, had he known that one of his
parents was about to contract indebtedness after their agreement
to convey their property to him and possession was taken there-
under, failed to notify the creditor that the parents did not own
the property, would not estop him from asserting his rights as
against the creditor seeking to subject the property to the satis-
faction of his claim.

Same:  CONVEYANCE OF HOMESTEAD.  A creditor cannot attack a con-
veyance of a homestead as fraudulent.

Same:  CANCELLATION OF CONTRACT:  RELIEF.  Where no express fraud
was shown on the part of the son as grantee in a deed from his
parents in consideration of their support, the conveyance could only
be set aside, if at all, by allowing him as a preferred creditor the
value of the care and support in good faith furnished them under the
contract.

*Appeal from Carroll District Court.*—HON. F. M. POWERS,
Judge.

. TUESDAY, OCTOBER 6, 1914.

ACTION in equity in the nature of a creditor's bill to
subject certain land to the payment of a judgment obtained

by plaintiff against F. W. Daiker and Theresa Daiker. There
was a decree for plaintiff, and defendants appeal.—*Reversed.*

*George G. Bowen* and *Brown McCrary,* for appellants.

*E. A. Wissler* and *Lee & Robb,* for appellee.

WEAVER, J.—On October 28, 1910, plaintiff obtained a
judgment against F. W. Daiker and his mother, Theresa Daiker,
in the district court of Carroll county. On the same day
execution was issued thereon, and immediately or very soon
returned unsatisfied. On October 31, 1910, this action was
begun; the plaintiff alleging that, shortly before the entry of
said judgment, the defendant Theresa Daiker fraudulently
and without consideration conveyed a valuable tract of land
owned by her in said county to her son Peter Daiker, and
that such conveyance was made by her and received by said
grantee with intent to defraud, hinder, and delay the plaintiff
in collecting its said debt. Upon these allegations it was
prayed that the conveyance be set aside and plaintiff's judg-
ment be enforced by a sale of the land. Defendants admit
the rendition of the judgment, admit the prior conveyance of
the land to Peter Daiker, and deny all charges of wrong and
fraud made against them in the petition. They further allege
that said judgment defendants had appealed from said judg-
ment to the Supreme Court, and had filed a good and sufficient
supersedeas bond in said cause, and the bond had been duly
approved. Issue having thus been joined, it appears that the
case was continued upon the docket without further action
therein for several terms; meanwhile the appeal in the original
case was prosecuted to completion, and the judgment was
reversed on the ground that the debt sued upon was not due
when that action was begun. It further appears that, after the
reversal, further proceedings were had in the district court,
where on October 28, 1912, another judgment was rendered
against F. W. Daiker and Theresa Daiker for the amount of

the same alleged debt.  Thereafter plaintiff filed in this case what is denominated a supplemental petition, though it is in fact an amendment by which the allegations of the original petition are so changed as to make its reference to a judgment against F. W. Daiker and Theresa Daiker apply to the judgment last rendered instead of to the first.  The defendants answer separately.

To avoid repetition, it may be said that the several defenses present substantially the following alleged facts: The defendants John Daiker and Theresa Daiker, husband and wife, are persons of advanced age, and F. W. Daiker and Peter Daiker are their children.  It is claimed that about the time Peter Daiker became of age, and many years before the creation of the debt, which plaintiff seeks to enforce, was contracted, he entered into an agreement with his parents by which he was to have the land in consideration of his undertaking to care for and maintain them during the remainder of their lives.  It is further claimed that, acting upon such agreement, Peter took possession, management, and control of said land and for twenty-eight years has continued therein openly and notoriously, thus imparting to plaintiff and the world constructive notice of his rights in the premises, and that the services he has so rendered in consideration of said land is equal to or more than its market value at that date, and that the conveyance made to him was given and received in good faith and in consummation of the agreement in fulfillment of which he has given all the time and labor of his adult years.

The foregoing is a sufficient statement of the issues upon which the merits of the case must turn.

I. Passing the many technical and collateral questions of pleading and practice which have been argued by counsel, we take up the vital inquiry whether the transfer of the land to Peter Daiker was either actually or constructively fraudulent.  Of the soundness of the legal proposition on which appellee relies, that a conveyance of all one's property liable to execution,

1. FRAUDULENT CONVEYANCES: who may attack same.

upon consideration that the grantee will maintain the grantor in the future or during life, is at least constructively fraudulent as against creditors, there can be no doubt. It is equally well settled in this and many other states that the term "creditors," as used in the statement of the rule, has reference only to existing creditors, and this is true even though a disposition of property, upon promise of future support, be treated as purely voluntary. The subject was discussed and the precedents reviewed by this court in *Brundag v. Cheneworth,* 101 Iowa, 256, and the conclusion therefrom stated as follows:

(1) A conveyance which is merely voluntary, and when the grantor had no fraudulent view or intent, cannot be impeached by a subsequent creditor. (2) A conveyance actually and intentionally fraudulent as to existing creditors cannot be impeached by subsequent creditors. (3) If a conveyance is actually fraudulent as to existing creditors and merely colorable, or if the property is held in secret trust for the grantor, who is permitted to use it as his own, it will be set aside at the instance of his subsequent creditors. The second rule above laid down is subject to some exceptions, among which may be mentioned cases in which the conveyance is made with the express intent and view of defrauding those who may thereafter become his creditors; cases wherein the grantor makes the conveyance with the express intent of becoming thereafter indebted; cases of voluntary conveyances where the grantor pays existing creditors by contracting other indebtedness in like amount, and wherein subsequent creditors are subrogated to the rights of the creditors, whose debts their means have been used to pay; and cases in which one makes a conveyance to avoid risks or losses liable to result from new business ventures or speculations.

The foregoing quotation states the rule so clearly and unequivocally as to render unnecessary further reference to authorities upon the fundamental proposition that, generally speaking, only existing creditors can successfully avoid a voluntary conveyance, gift, or other disposition of property.

II. Whether the appellee herein is entitled to be classed as an existing creditor depends entirely upon the further

question whether the rights of Peter Daiker, as against the creditors of his mother, are held to date from the actual making and delivery of her deed to him, or from the time the agreement between them was made and he took possession and control of the land.

2. SAME: existing creditors.

Counsel for appellee assume in argument that we must look alone to the deed, and, as this was confessedly made after the creation of the indebtedness which is sought to be enforced against the land, appellee was therefore clearly an existing creditor. To this we are unable to agree. It is shown so clearly as to be beyond fair question that very soon after Peter Daiker reached his majority there was an agreement between him and his parents that he was to have the land in consideration of his undertaking to remain upon it, control and manage it, and support and maintain his parents during the remainder of their lives. It is true that the testimony is somewhat involved and somewhat awkwardly stated, and that, upon examination and cross-examination of the parties, the words "wages" and "rent" are sometimes employed. The parents are of foreign birth, the mother still speaks only in her native tongue, and all of them use words apparently without full and clear comprehension of their exact technical import; yet taking the evidence as a whole, including that given by disinterested witnesses, we can come to but one conclusion, that Peter was to have the land upon the consideration above mentioned. It is shown without dispute that he did then assume charge of the land, and that ever since, and for a period of twenty-eight years, he has used it in all respects as his own, rendering no account to his parents, but has supported and cared for them and supplied their needs as occasion has required. This situation was open and notorious to their neighbors and to the public, and plaintiff admits, by the testimony of its officers, that, when the mother's name was obtained upon the notes of F. W. Daiker, it knew that Peter was in possession, farming the land. Such possession and control were notice to the world of the right or claim of right under

which they were exercised, and only those who were creditors when such transaction was had and such possession taken are entitled to rank as existing creditors, and the date of the deed subsequently made in pursuance or consummation of the original agreement is not a matter of decisive importance. Stated in other words, the contract being valid between the parties themselves, and the rights of no existing creditor being involved, and notice of such contract having been given to the world by Peter's assumption of possession and exclusive control, it follows of necessity that, in the absence of elements of estoppel against him, his rights in the premises cannot be defeated or destroyed by subsequent creditors of his parent.

A somewhat similar question was before this court in *Cloud v. Malvin*, 108 Iowa, 52, where an action was brought in the nature of a creditor's bill to subject certain tracts of land to payment of a judgment against Sarah Malvin. Before she contracted the debt on which the judgment was rendered, Sarah Malvin had agreed with three of her sons that, if they would stay at home and operate the farm, she would leave them a specified tract of sixty acres. In pursuance of that agreement, the children performed the stipulated service for a period of ten years, when, on the eve of the rendering of a judgment against the mother, she conveyed the land to her sons in satisfaction of her agreement. The judgment creditor then became plaintiff in an equity proceeding to subject the land to the payment of the debt, and it was held that the conveyance was supported by a sufficient consideration, and the judgment creditor was without recourse upon the land. A holding to similar effect is found in *Nichols v. Burch*, 128 Ind. 324 (27 N. E. 737), where the grantee in such a deed, pleading to an action by the grantor's creditor, alleged that the conveyance was made pursuant to an agreement for future support long before grantor had become indebted to plaintiff, and without fraudulent intent, and upon demurrer the answer was held to be good. The same court has held that such a conveyance is valid against everybody, except existing credi-

tors, and, where the grantee had performed his part of the agreement, it became a valuable consideration, and the deed could be set aside only on averment and proof of express fraud. *Willis v. Thompson*, 93 Ind. 62. So also even where the original transaction is in the nature of a mere gift or agreement to give land, and the donee takes possession upon faith of the gift and expends his time, labor, and money in improvements thereon, and the donor at a later date makes a deed of conveyance in pursuance of such gift, those who were not creditors when the gift was originally made cannot have the conveyance set aside as either voluntary or fraudulent as to them. *Dozier v. Matson*, 94 Mo. 328 (7 S. W. 268, 4 Am. St. Rep. 388); *Van Bibber v. Mathis*, 52 Tex. 406. A gift or conveyance which is not fraudulent when made cannot become so by subsequent events. *Dodd v. McCraw*, 8 Ark. 83 (46 Am. Dec. 301). Stated otherwise, if such gift, contract, or conveyance be not at the time prejudicial to the rights of any other person or in execution of any meditated scheme of future fraud or injury to-others, and the parties have acted in reliance thereon or in fulfillment thereof, it will not be held fraudulent at the demand of a subsequent creditor of the donor or grantor, and particularly is this true where the subsequent creditor extended the credit with actual or constructive notice of the transaction which he seeks to impeach. *Nicholas v. Ward*, 1 Head (Tenn.) 323 (73 Am. Dec. 177).

The only authority cited by appellee which may afford any apparent support for a different rule is *Graham v. Rooney*, 42 Iowa, 567, and this, when carefully read, will be found not inconsistent with the view we have already expressed. In that action the defendants were garnished as supposed debtors of their father, the judgment defendant, and the proof showed they had taken a conveyance of land from him shortly before the judgment was entered; the deeds reciting the consideration thereof to be $1,000, and the evidence showing it to be worth in fact $6,400. It was their claim that the real consideration was.labor performed by them on the farm and their agreement

to furnish their father future support. The judgment credi-
tor's debt was contracted before the land was conveyed, but
after the date of the alleged agreement between the father and
the sons. There was no evidence that the sons ever took
possession of the land prior to the making of the deed or of
any notice, actual or constructive, to the judgment creditor
of their alleged rights. The court in its opinion points out
that they were acting as mere employees of their father, say-
ing, ''There is no proof that they assumed or were intrusted
with the management of the business;'' and, after comparing
the value of the services which they had rendered with the
value of the land conveyed to them, they were found liable
as garnishees to a sufficient amount to pay the claim in suit,
which was less than $700. The material difference between
the question treated in the cited case and the one here pre-
sented is too manifest to require further consideration.

Assuming, then, as we think is correct, that the right of
Peter Daiker in the premises must be held to date from the
time he entered into the agreement with his parents and gave
notice thereof by taking over the possession and control of
the property, it must also be held that the plaintiff herein
was not an existing creditor, and can maintain this action
only upon an affirmative plea and proof of a sufficient estoppel
against the assertion of Peter's right to the property, or that
the transaction between him and his parents was tainted with
an express fraudulent intent to cheat and wrong the subse-
quent creditors of the parents. To this point we cite again
*Brundage v. Cheneworth, supra,* and the cases there mentioned
and relied upon. That there was any purpose in the original
transaction to defraud subsequent creditors there is no show-
ing whatever. More than a quarter of a century elapsed from
that date before plaintiff herein claims to have extended credit
on the strength of the notes since reduced to judgment. Cer-
tainly it cannot be claimed or even imagined that this mother,
when she entered into the agreement with Peter, had a
prophetic vision of the fact that in the far future one of her

sons would become deeply indebted to a bank, and that her assumption of liability thereon, as surety or otherwise, would be demanded as the price of the bank's forbearance or extension of credit, and that she would assent thereto, and that with such conditions in view, and to escape such remotely possible liability, she conveyed, or agreed to convey, the land to Peter. Neither is there any evidence of any circumstances in the situation of these parents at that time which tend in any degree to bring their agreement with Peter within the scope of the exceptions which this court says in the *Brundage* case, *supra,* are sometimes recognized to the rule which holds a voluntary disposition of property good against subsequent creditors.

In this connection we may as well refer to the argument advanced that actual fraudulent intent is evidenced by the gross inadequacy of the consideration for parting with the title to the land. Whether such contention would be sound if the origin of the transaction were of recent date, when the property has acquired increased value, we need not stop to consider, for upon every sound principle we must go back to the date when the agreement was made and possession taken, and pass upon the reasonableness of the terms of the agreement in the light of the conditions then existing. In consideration of property then worth, according to the testimony, not to exceed $5,000, and subject to a mortgage, Peter assumed the care and support of his parents for life. They still survive, with an expectancy of five years or more to their credit. Can we say, as a matter of fact, that the giving of property of such value is a grossly excessive compensation for assuming the care, support, and maintenance of two such persons, in sickness as well as in health, for such a period of time, or until their death, however long postponed? No one would so argue. It would hardly seem necessary to cite authorities on this point, and we stop only to note, by way of illustration, the case of *Hunt v. Hoover,* 34 Iowa, 77. In that case an attempt was made by a creditor

3. SAME: intent: consideration.

to set aside a deed from father to son.  There the father had
agreed that, if the son would remain with him for four years,
he would give him a farm of eighty acres.  The conveyance
was not made until fifteen years after the service was per-
formed.  The court sustained the conveyance and held the
increased value of the land, after the rendition of the serv-
ices, would not affect the validity of the deed.  There is no
proved inadequacy of consideration in this case.

III.  We have thus far assumed that Peter Daiker took
and retained possession from the time when the agreement
with his parents was made.  Counsel for appellee contend
otherwise, and broadly assert in argument
that there was "no change of possession or
in the manner of handling the farm."  With
this as a starting point, they say that the record title having
been left in the mother, and no constructive notice having
been given by any change in the possession of the property,
and plaintiff having extended credit upon faith of her ap-
parent title, it would work a fraud upon plaintiff to permit
Peter to assert title in himself, and thereby defeat the enforce-
ment of the judgment.  If this were a correct statement of
the record, there would be much force in the argument, but
a reading of the evidence makes it very plain that counsel
have mistaken its effect.  John Daiker swears that, beginning
when twenty-one years of age, Peter has "farmed the land
for himself."  "Since that time Peter has managed, controlled,
and worked the farm."  He further says that Peter marketed
the produce and accounted to no one for it, hired and paid
the help, paid the bills and outstanding debts, and that his
parents "had nothing to do with it."  Some four or five other
immediate relatives testify to the common understanding and
knowledge that Peter was exercising dominion over the prop-
erty under an agreement or arrangement with his parents by
which he was to care for and maintain them in consideration
of the land; that he had sole control and management of the
property, and placed permanent and valuable improvements

4.  SAME: change
   of possession:
   evidence.

upon it; and that he claimed to own it. The local merchant says that:

Peter paid the bills and did the business in relation to family matters. Peter paid all the bills. We looked to Peter to pay the bills.

He further says that the parents informed him "years ago" that Peter was to have the farm. The family physician during all these years, who had visited the place on different occasions, says:

It was apparent Peter was the manager of the farm. He paid me.

The nearest neighbor says Peter appeared to be operating the farm, and that the mother frequently said the other children had received what was coming to them, and that the farm was to be Peter's. The farm implement dealer says:

Peter was running the farm and everything was charged to him.

There is other evidence to the same import, and none whatever to the contrary. There is not a word of evidence tending to show that, from the time the agreement with Peter is alleged to have been made, the parents exercised any act of dominion or ownership over the property, except the circumstance that a loan or mortgage debt secured on the land was removed or extended, and in these transactions the parents executed the necessary papers—a thing which is not necessarily inconsistent with Peter's claim in this action. In this connection it further appears that the proceeds of the loan, over and above the amount necessary to satisfy the old lien, were turned over to Peter. It is true there has never been any change in the residence of the parties. They have continued to live as one family in the same house on the farm, but this is not inconsistent with a change of possession, in the

legal sense of the term. There is no law which forbids or stamps with the stigma of actual or constructive fraud a transfer of property merely because it is made from one member of a family to another living under the same roof. For the purposes of this discussion, possession may be said to consist in going or being upon the premises in question, in exercising acts of dominion over the land, and in making the ordinary use of it to which it is adapted, and in taking the profits of which it is susceptible. *Webber v. Clarke,* 74 Cal. 11 (15 Pac. 431). It is usually evidenced by occupation, cultivation, or other proper use to which owners ordinarily put such property, or by control to the exclusion of others. 1 Words and Phrases, 165. Transfer of dominion between persons living on the same premises or in the same family is sufficiently indicated when the grantor ceases, and the grantee begins openly and visibly to exercise the authority and control which characterizes ownership, and this is especially true where the parties make no secret of their changed relations to the land, and such relations are generally known and recognized in the community and among those with whom they deal and do business. In *Thouron v. Pearson,* 29 N. J. Eq. 487, it was held that the fact that a son remained in apparent possession of lands after conveying them to his father, who was old and feeble and lived with his son, was no proof of fraud. In *Cooper v. Johnson,* 143 Mass. 108 (9 N. E. 33), it was likewise held that, where a father deeded land to his son, it was not fraudulent, as a matter of law, for the son to permit the grantor to occupy the premises. In *Thompson v. Williams,* 100 Md. 195 (60 Atl. 26), a father conveyed property to his daughter, a member of his household. A creditor of the father, attacking the deed, insisted there was no sufficient showing of any change in the possession and control of the property, and the conveyance should be held fraudulent. In overruling the point so raised, the court says:

Is it to be assumed that, because Miss Williams did not turn her father and mother out of the house after she had

purchased the property, the whole transaction was a sham and devoid of good faith? Is it a legitimate inference that the sale was pretended and not real because the daughter, after acquiring the property, permitted her father to remain under the shelter of the roof which had been his for years? Unless it be an unbending and inexorable requirement of the law of evidence that, when a child buys from a parent property owned by the latter, the child, to avoid the imputation of fraud, . . . must at once and for all time close the door of her home against the father, from whom she purchased it, the mere fact that he continued to reside on the premises after the conveyance, as he had done prior thereto, cannot impeach her good faith in acquiring title to the land. The law exacts no such unfilial and unnatural conduct to vindicate the integrity of the transaction.

The case before us is far stronger for the defendant than those we have cited, because the agreement between the parents and Peter Daiker clearly contemplated that the parties should continue to live together on the farm. The agreement being, as we have said, a perfectly legal and valid one between themselves, the only change necessary to carry it into effect was a change in their respective attitudes and relations with respect to the property. Peter was to become in effect the business head of the family where before he stood simply in the ordinary relation of a son in the home of his parents. His parents were to surrender dominion over the property, and he was to assume it. He was to provide support and maintenance for the mother and father, who had hitherto supported him. The good faith of the agreement is challenged by no existing creditor. It has been acted upon and performed by the parties for a long series of years, and unless there has been such a want of notice to the world, as that plaintiff may be heard to say it was deceived into extending the credit, it is not, as a subsequent creditor, entitled to challenge the good faith or validity of the transaction. There was of course no record notice until the filing of the deed, which was thereafter made, but notice by possession, by open and notorious exercise of exclusive dominion and claim of

right, is too well established to admit of doubt, and such notice is of equal force and value as if it were imparted by a formal writing spread upon the public records. Indeed, as we have already noted, plaintiff admits that, when it took the notes, it knew that Peter was living upon and farming the land. This or some other fact led it to examine and ascertain the condition of the public record of title, but it is not without significance that it refrained from applying directly to Peter for information as to the nature or extent of his right in the premises. Such admission, under the proved and admitted circumstances, is, in our judgment, fatal to the claim that the credit was extended without notice of the contract or agreement under which Peter was in possession and control of the farm.

Nor is there any other proved circumstance on which he can be held estopped to insist upon his rights. It is shown that he never knew or heard that his mother had signed the notes in suit until this action was begun.

5. Same: estoppel. Even if he had known it, he was not bound to object or to go to plaintiff and warn it that his mother did not own the property.

Without substantial exception, all the precedents to which we are here cited by appellee are those in which title to property has passed between husband and wife without visible substantial change in its possession, management, or control, and the grantees have been held estopped or to be chargeable with fraud as against the creditors of the grantors. These cases are not at all parallel with the one before us, and, granting the soundness of all such decisions, they are not here applicable.

IV. What we have already said is determinative of the appeal, but it may be proper to say further, in view of the argument made, that, even if it had been found for any reason that the plaintiff had an apparent or technical standing to question the validity of

6. Same: conveyance of homestead. the defendant's title, it is quite doubtful whether, upon a proper consideration of the facts, the court

could award any substantial relief, for in no event could plaintiff be allowed to subject the homestead part of the land to its judgment. *Delashmut v. Trau,* 44 Iowa, 613; *Clark v. Raymond,* 86 Iowa, 661; *Barnett v. Knight,* 7 Colo. 365 (3 Pac. 747); *Stewart v. Wooley,* 2 Ohio Dec. 341; *Bell v. Devore,* 96 Ill. 217; *Brown v. Campbell,* 68 Neb. 103 (93 N. W. 1007); *Danforth v. Beattie,* 43 Vt. 138.

Moreover, there being no showing of express fraud on the part of Peter Daiker, his title could be set aside only upon allowing him, as a preferred claim, the value of the consideration he had in good faith furnished

**7. SAME: cancellation of contract: relief.** his parents pursuant to his agreement. *Harris v. Brink,* 100 Iowa, 369; *Kelsey v. Kelley,* 63 Vt. 41 (22 Atl. 597, 13 L. R. A. 640); *Walker v. Cady,* 106 Mich. 21 (63 N. W. 1005); *Banking Co. v. Dennis,* 56 N. J. Eq. 549 (39 Atl. 689).

Other conclusions, as set forth in the preceding paragraphs of this opinion, supersede the necessity of our going into any investigation of the value of the consideration so furnished for the conveyance, but it is evident that it would amount to a very considerable sum. As having more or less bearing upon the various topics discussed, see *Cottrell v. Smith,* 63 Iowa, 181; *Bank v. Weston,* 103 Iowa, 736; *Sharpless' Appeal,* 140 Pa. 63 (21 Atl. 239); *Martin v. Remington,* 100 Wis. 540 (76 N. W. 614, 69 Am. St. Rep. 941); *Schreyer v. Scott,* 134 U. S. 405 (10 Sup. Ct. 579, 33 L. Ed. 955); *Paris Grocer Co. v. Burks,* 56 Tex. Civ. App. 223 (120 S. W. 552); *Trust Co. v. Comstock,* 130 Mich. 572 (90 N. W. 331).

For the reasons stated, the decree below must be reversed, and the cause will be remanded, with instructions to dismiss the plaintiff's petition.—*Reversed.*

LADD, C. J., and EVANS and PRESTON, JJ., concur.