R. B. THODE, Appellant, v. M. L. LAMBERT et al., Appellees.

**FRAUDULENT CONVEYANCES:** Invalidity as to Subsequent Credi-
1 tor. A mortgage, colorable and without consideration, and executed
for the purpose of so burdening the property as to ward off present
and *future* creditors of the owner of the land, will not prevail over
a sheriff's deed issued on a *subsequent* execution sale against said
owner.

**JUDGMENT:** Conclusiveness—Unlitigated Issues. A decree that a
2 tax deed is invalid because of the one fact that the notice of expira-
tion of redemption was insufficient, is not an adjudication of *all
matters affecting the title* between the parties—is not an adjudica-
tion that a title subsequently acquired under a sheriff's deed is
subject to a pre-existing mortgage on the property.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 15, 1921.

SUIT in equity, to foreclose a mortgage. Various defenses
were interposed, including the defense of fraud and that of the
statute of limitations. There was a decree dismissing the peti-
tion, and the plaintiff appeals.—*Affirmed.*

*George Harnagel,* for appellant.

*John C. DeMar, S. B. Allen, C. C. Putnam, Judson E.
Piper,* and *C. H. Miller,* for appellees.

EVANS, C. J.—I. The record is multifarious and quite be-
clouded. The mortgage sued upon bears date March 10, 1904,
and purported to become due in three years from date. This
suit was begun in February, 1918. The plain-
tiff holds the mortgage as assignee, and holds
the same by a chain of title which discloses sev-
eral successive assignments. The mortgagor was
Reinhard. The mortgagees were Alex and W. F. Loose. Some-
where behind the original transaction, and thereafter at all
times behind the successive assignments, was B. F. Loose, who

appears to be the leading actor in the play, if such it may fairly be termed. The defendant M. L. Lambert first went into possession of the property under a purported tax deed, executed in 1915. Subsequently, her tax deed was set aside by judicial decree, for want of a proper notice of expiration of redemption. Subsequently, she obtained a sheriff's deed, under certain execution sales, against the defendant B. F. Loose, and she has since maintained her possession under such sheriff's deed, and now claims title thereunder. Her defenses, in brief, are:

(1) That the mortgage sued on was colorable only, and without consideration, and that it was executed for the benefit of the defendant B. F. Loose, and for the fraudulent purpose of protecting the property against all claims of creditors, whether existing or subsequent.

(2) That the mortgage was fully barred by the statute of limitations, before the action was begun.

(3) That by its own terms the mortgage was reduced to a nullity at the time of its execution.

The defendant B. F. Loose makes no defense against the mortgage.

Plaintiff's reply to the defenses set up avers: (1) That the mortgage was extended, at the time of its maturity, for a further period of two years; (2) that neither the defendant Lambert nor those under whom she claims, were existing creditors at the time of the execution of the mortgage, but were subsequent creditors only.

If a succinct statement of the facts were possible, it would, perhaps, furnish a sufficient discussion of the case. Five brothers figure in the evidence, namely: B. F. Loose, Alex Loose, W. F. Loose, W. W. Loose, and George Loose. For convenience, we shall refer to them by their initials only. The mortgage in suit originally covered three lots in the city of Des Moines. Only one of these, however, is now involved in this suit, being Lot 13 in Williams' First Addition. The only parties adversely interested to the defendant Lambert are the plaintiff and the defendant B. F. Loose. As between the latter two, no controversy is presented, B. F. Loose being the owner of the fee at the time of the execution sale, and ever since.

At the time of the execution of the mortgage, the mortgagor,

Reinhard, uncle of the five brothers, had the record title to the mortgaged lots. Such title emanated from B. F. Loose, through one or more mesne conveyances. Reinhard had no actual interest in the property, and never claimed any. He at all times recognized B. F. as the real and sole owner thereof. He executed the mortgage solely at the request of B. F. The mortgage purported to secure two promissory notes for $1,811 and $329 respectively. These notes were in the ordinary form of negotiable promissory notes. The mortgage as executed contained the following provisions:

"It is expressly understood and agreed that the within described property securing the within consideration $2,158 is the only security given and there is to be no personal liability on the part of said mortgagors."

On the back of the notes, respectively, B. F. wrote an indorsement, to the effect that the makers should not be personally bound thereby. He also indorsed on the back thereof, respectively, his personal guaranty of payment. The payees were residents of Missouri, at the time of such execution, and were not present at the time thereof; nor do they appear to have had anything to do with procuring the same. It was in this form that the notes and mortgage were delivered to the payees, if delivered at all. At or about this time, B. F. was about to enter upon a judicial career in a very literal sense. From that time forth, the judicial dockets of Polk County became besprinkled with his name, either as plaintiff or defendant. Four days after the execution of the mortgage, Reinhard conveyed the property back to B. F., who at all times thereafter withheld his deed from record. It is claimed for the plaintiff that, in 1907, when the notes matured, they were extended by mutual arrangement between B. F. and the payees. The method of extension was that B. F. indorsed upon the mortgage this statement: "This mortgage extended to March 9, 1909." He also executed to his brothers Alex and W. F. his own promissory notes for the full amount of the original notes, with interest, and orally agreed that the mortgage should stand as security for the new notes.

At the trial, Reinhard was called as a witness for the plaintiff. His testimony proved damaging to the plaintiff. From his testimony it appeared that B. F. held the possession of these

notes and the mortgage for at least a long time after they were executed. He testified also that it was his agreement with B. F. that his notes were to be returned to him, and that he had fre- quently asked for them. It further appears that these notes and the mortgage were first assigned by the payees to W. W. Loose. Afterwards, they were assigned back by W. W. Loose to the payees. Later, they were assigned by the payees to the present plaintiff, Thode. No consideration in fact passed in any of these assignments. They were all done under the direction of B. F. Loose. None of these parties appeared as witnesses, except the brother Alex. His testimony is very indefinite as to the existing indebtedness, if any, by B. F. to the payees. A payment of $10 upon each note was the full extent of payment ever made thereon. Of the three properties included in the mortgage, two of them were voluntarily released, without any consideration. No at- tempt appears ever to have been made by any holder to collect under the mortgage, until the beginning of this suit by the last assignee. The circumstances as a whole, as they appear in the record, are very convincing that B. F. is the only person who has had any real interest in any of the transactions under con- sideration, and that these transactions have been colorable only, and for his protection against all comers, present or future, and that they have been directed by him alone, and have been acquiesced in by his brothers without inquiry, and apparently without any sense of personal interest. Such is our conclusion upon this record.

It is urged, however, by the appellant that this defense is not available to defendant Lambert, as a subsequent creditor. We think, however, that the facts of the case bring it squarely within the rule announced in *Brundage v. Cheneworth*, 101 Iowa 256, and in *Farmers & M. Bank v. Daiker*, 166 Iowa 728.

In the first cited case, we said:

"We think the correct rule is: (1) A conveyance which is merely voluntary, and when the grantor had no fraudulent view or intent, cannot be impeached by a subsequent creditor. (2) A conveyance actually and intentionally fraudulent as to existing creditors, as a general rule, cannot be impeached by subsequent creditors. (3) If a conveyance is actually fraudulent as to existing creditors, and merely colorable, and the property

is held in secret trust for the grantor, who is permitted to use it as his own, it will be set aside at the instance of subsequent creditors. The second rule above laid down is subject to some exceptions, among which may be mentioned cases in which the conveyance is made by the grantor, with the express intent and view of defrauding those who may thereafter become his creditors; cases wherein the grantor makes the conveyance with the express intent of becoming thereafter indebted; cases of voluntary conveyances, when the grantor pays existing creditors by contracting other indebtedness in a like amount, and wherein the subsequent creditors are subrogated to the rights of the creditor whose debts their means have been used to pay; cases in which one makes a conveyance to avoid the risks or losses likely to result from new business ventures or speculations. The following authorities will be found to support the above rules and exceptions: Wait, Fraudulent Conveyances, Sections 96, 97, 98, 100; Bump, Fraudulent Conveyances (4th Ed.), Sections 290, 293, 296, 300; 2 Pomeroy, Equity Jurisprudence, Sections 971—973; 1 American Leading Cases (5th Ed.) 42, notes. We have not overlooked the fact that there are respectable authorities holding that a conveyance actually fraudulent as to the existing creditors may, for that reason alone, be avoided by subsequent creditors. We are not, however, prepared to assent to the correctness of such a doctrine. Under our holding, the petition stated a good cause of action under the third rule above stated, and hence the demurrer was improperly sustained.''

In view of the conclusion here reached, we have no need to consider the question whether the notes executed by Reinhard with disclaimer of personal liability had any legal validity whatever; or whether the subsequent notes executed by B. F. Loose could be deemed a renewal of the previous notes signed by Reinhard; or whether a mere oral agreement was competent and sufficient to bring the notes executed by B. F. within the purview of the mortgage previously executed by Reinhard.

II. The plaintiff pleaded an adjudication against the defendant in that, in the suit to set aside the tax deed, the decree

2. JUDGMENT: conclusiveness: unlitigated issues.

became binding and conclusive of all matters affecting the title, as between the parties. B. F. Loose, as purported fee owner, brought such

action in December, 1915, within a few days after the issuance of the tax deed. He was joined as plaintiff by W. W. Loose, then the holder of the present mortgage. B. F. Loose in such action averred that his title was subject to the mortgage. No issue was presented by any pleading upon such question. Was the defendant Lambert in such suit bound to anticipate the present controversy and to adjudicate it in that suit? In that case, the trial was had and the case submitted in November, 1916. Up to that time, the defendant Lambert had not received her sheriff's deed, nor become entitled to it. She could not, therefore, have litigated that question in that suit at any time prior to the submission of the case. It appears, however, that the formal decree, and perhaps the announcement of the decision in the case, was not made until the March following. A few days prior to such date, and within the same month, the defendant Lambert did obtain her sheriff's deed, at the expiration of the year of redemption. Does that fact operate to render the decree actually rendered an adjudication of a title acquired after the submission of the case? We think not. The only issue tried or tendered in the tax deed case was whether a sufficient notice of expiration had been given. Was the defendant Lambert bound to raise any question as to the validity of the mortgage? In that suit, it was quite an immaterial question. The fee owner was in court as plaintiff. If the notice of expiration were to be found insufficient, the defendant's tax title would necessarily fall. The right of redemption would be opened up, and it would be entirely immaterial to the defendant whether the fee title was mortgaged or not. If she were defeated on that question, as between her and the fee owner, she could have no standing to contest the mortgage, because she would have no interest therein. Her tax title was defeated. Thereafter, as a judgment creditor, she stood in no different attitude towards her judgment debtor or a fraudulent mortgagee than did any other judgment creditor.

III. It appears that, in entering judgment in the tax-title suit, the trial court ordered a payment to be made by the fee owner for the purpose of redemption, amounting to over $600. Such sum was thereafter paid in to the office of the clerk of the district court as a tender of redemption, and has there continued ever since. In the decree now under consideration, the trial

court ordered the return of such deposit to the maker of it.   As to this feature of the order, no complaint is made by the appellee. Some question, however, is raised by the appellant as to the propriety of such order.   The real purport of that order is not very clear, under the language of the decree; nor does the appellant make clear just what his complaint thereof is; nor does the record make clear who it is that is fairly entitled to the return of that deposit.   That feature of the case is, therefore, reserved from the adjudication, and the decree is modified in that respect, and the cause will be remanded, with full power to the district court to make such further order in respect thereto as to it shall seem equitable and just.   With this modification, the decree below will be affirmed.—*Modified and affirmed.*

STEVENS, ARTHUR, and FAVILLE, JJ., concur.